CHASE LANGMAID *vs.* RICHARD R. HIGGINS & another.

Suffolk.    March 8. — Sept. 10, 1880.    ENDICOTT & SOULE, JJ., absent.

A passageway was laid out in the rear of lots of land which fronted on two streets, and ran in an easterly direction to another street, called S. Street; and it was subsequently extended by other owners of land in a westerly direction to the land of a third person. After this the owner of a lot of land, the rear of which was bounded partly by the passageway as first laid out, and partly by the passageway as extended, conveyed the lot, bounding it on the "passageway which runs to S. Street, with a right to the free use in common with others having rights therein of the said passageway leading to S. Street." *Held*, that the grantee had a right of way only to S. Street, and had no rights in the extended passageway westerly of his land, even if his grantor had rights therein at the time of the conveyance.

TORT for the erection of a brick wall and building across a passageway five feet wide, in the rear of the defendants' lot,

situated on the south side of Court Street in Boston, whereby the plaintiff was prevented from going in a westerly direction along the passageway, and the building on his lot was deprived of light and air. The location of the lots of the parties as to each other and the adjoining lots is shown on a plan, a copy of which is printed in the margin.*

Trial in the Superior Court, without a jury, before *Brigham*, C. J., who ruled that the plaintiff was entitled to nominal damages for the obstruction to his use of the passageway, and to substantial damages for the injury to his right of light and air, and ordered judgment for the plaintiff in the sum of $101. The defendants alleged exceptions, which appear in the opinion.

*A. Russ & D. A. Dorr*, for the defendants.

*G. E. Smith*, for the plaintiff.

COLT, J. The parties to this action own adjoining estates in Boston, on the south side of Court Street, in the rear of which, at the time of the injury complained of, there was a passageway extending in a westerly direction from Stoddard Street to land known as the Spooner estate. The plaintiff's lot lies easterly of the defendants' and nearer to Stoddard Street; and he seeks to recover damages for the defendants' obstruction of this way by the erection of a building over it in the rear of the defendants'

lot, which excludes the light and air from the premises of the plaintiff, and prevents his use of the west end of the way from the rear of his land to the Spooner estate.

The defendants contend that the passageway in question, which at the time of. the alleged obstruction appeared to be a continuous way extending some one hundred and fifty feet from Stoddard Street to Spooner's land, was nevertheless two separate ways, laid out at different times by different owners as appurtenant to separate estates, and joining each other at a point eighty-nine feet and six inches from Stoddard Street; and that the plaintiff had no right of way over the westerly part.

In 1825, and for many years after, John Hubbard owned all the land which abuts on said passageway, except the corner lot bounded by Stoddard Street and Court Street, and called West Row. At that date, the passageway as laid out by previous owners extended only eighty-nine feet and six inches westerly from Stoddard Street. That distance carried it partly across the rear of the lot now owned by the plaintiff. The first mention of this passageway is in the deed of John Amory to John Hubbard, in 1822, of the lot on the corner of Howard Street and Stoddard Street, in which the north side of that lot is bounded on land " laid out as a passageway of five feet leading from the rear of said Amory's Cambridge Street estates to said Stoddard's Lane, and measuring on said passageway as the fence now stands about eighty-nine feet and six inches." By this deed a right of way for a distance of eighty-nine feet and six inches, and no further, is conveyed to Hubbard. At that time Amory had no Cambridge Street estates which were west of the lot now owned by the plaintiff. The estate which he then had on Cambridge Street, or Court Street as it is now called, was conveyed to Hub bard in 1825, who at about that time also acquired his title to all the land lying between it and the Spooner estate. At that time, the passageway did not extend in a westerly direction beyond the estate now owned by the plaintiff, and there was no evidence at the trial that it extended westerly of that estate before 1830. It does not indeed appear precisely when or by whom the same was extended. It only appears that, from 1830 to the time of the alleged wrongful act of the defendants in 1875, the whole of

the present passageway to the Spooner estate was in existence, and used by the occupants of estates abutting thereon as they had occasion.

Both parties claim under Hubbard, and the question is whether the latter, after he acquired title in 1825, extended the passageway to land of Spooner for the benefit of the plaintiff's lot, so that a right in the same passed by the deed or otherwise to the grantees of the plaintiff's lot. It is wholly a question of intention, to be ascertained from the language of the deeds under which the parties claim, interpreted with reference to what is indicated by the situation of the respective estates as necessary for their reasonable use and enjoyment. A deed in which the premises conveyed are bounded on a defined and existing passageway gives to the grantee by estoppel rights not only in that part which adjoins his own land, but also by necessary implication in such portion of the whole way as will make the same available and useful as an appurtenance to the estate granted. The extent of the grantee's rights beyond the limits of his land will depend upon the nature and character of the way, and its connection with the public streets, as affording a convenient outlet from his land. When the extent or limits of the way are defined in the deed by reference to a plan or otherwise, the estoppel is not confined to so much of the way as is necessary for the enjoyment of the granted premises, but extends to the whole way as defined. *Fox* v. *Union Sugar Refinery*, 109 Mass. 292. *Morgan* v. *Moore*, 3 Gray, 319. In *Thomas* v. *Poole*, 7 Gray, 83, a right was granted in a passageway described as extending from one monument to another, and an easement in the whole was held to have been given by the terms of the deed; and in *Rodgers* v. *Parker*, 9 Gray, 445, a plan was referred to in the deed showing the entire extent of the way in question.

In the case at bar, the passageway to the extent claimed by the plaintiff was not defined in the deed under which he claims, nor by reference to a plan showing that the whole passageway to the Spooner estate was laid out for the benefit of all the abutting lots. It was, as we have seen, laid out by different owners at different times, and not as a common passageway for a number of lots intended to be conveyed by the grantor to several different grantees. There was no evidence that the plaintiff,

or any tenants, occupants or persons resorting to his estate, had ordinarily any occasion, necessity or convenience, requiring them to pass over the passageway located west of his land.

The plaintiff's lot was conveyed by Amory to John Hubbard, in 1825, by a description which bounds it on the north by Court Street; on the east by the West Row lot; on the south by the lot at the corner of Howard Street and Stoddard Street which the grantor had previously conveyed to Hubbard; and on the west by land of Bedlington. Within the bounds thus given, there was at this time another passageway running southerly from Court Street to the rear of the lot, and the only reference in this deed to the passageway in question is in these words: "including in said bounds the passageway of five feet, as the same now runs from Court Street into another passageway running from Stoddard's Lane along the rear of my West Row estate."

After the death of Hubbard, his executors, in 1847, conveyed the lot on Court Street now owned by the plaintiff to George Hubbard, who conveyed the same in the following year to the plaintiff, by deeds both of which bounded the same " southeasterly by land formerly of John Amory, this line running through the middle of the brick wall between the granted premises and said estate late of John Amory, and extending from Court Street to a passageway about four and a half feet wide which runs in the rear of both estates to Stoddard Street; southwesterly on said passageway twenty-three feet to land of John Higgins " "with a right to the free use in common with others having rights therein of the said passageway leading to Stoddard Street." This description of the way, by the rules above stated, cannot be interpreted as showing anything more than an intention to grant a right over the old passageway to Stoddard Street, and not over its extension to the Spooner estate. This is decisive so far as the right of the plaintiff depends upon the deeds produced at the trial.

As to the prescriptive right claimed in this part of the way at the argument, it is sufficient to say, that the statement in the bill of exceptions, that from 1830 "it was used by the owners, tenants and occupants of the estates abutting thereon, and persons resorting thereto, as they had occasion, throughout the

whole extent thereof, from Stoddard's Lane to said Spooner's estate," cannot be fairly construed as a finding by the judge that the plaintiff had acquired by prescription the right now claimed. This is confirmed by the further consideration that the judge found that there was no evidence of the right of any person to enter upon said passageway from the Spooner estate, or to enter upon the Spooner estate from the same, or any evidence that the plaintiff or any tenants or occupants of his estate had ordinarily any occasion, necessity or convenience requiring them to pass over the passageway westerly from the plaintiff's estate. If such had been his finding, there would be no occasion for devoting so large a part of the bill of exceptions to a recital of the deeds under which the parties claim.

*Exceptions sustained.*