ANNIE GOLDSTEIN *vs.* JOSEPH BEAL & another.

Suffolk. October 3, 1944. — March 1, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Way*, Private: creation. *Deed*, Construction. *Real Property*, Registered land: plan, easement. *Easement. Trespass. Equity Jurisdiction*, Trespass, Laches. *Laches. Equity Pleading and Practice*, Decree.

The fact, that the owner of a tract of registered land erected a building thereon occupying nearly one half of the location, throughout its entire length, of a passageway shown on a plan as running along the common boundary of two lots, also shown on the plan, into which the tract was divided upon a subsequent severance of the common ownership by the giving of a separate mortgage of each of such lots, prevented any easement in the passageway coming into existence in favor of either lot upon such severance, although, in a new certificate of title then issued to the mortgagor and in all subsequent deeds of and certificates of title to the lots, the lots were referred to as those "shown" on the plan.

Upon severance of a common ownership of two contiguous lots of registered land, during which common ownership a fire escape on a building on one of the lots had overhung the other lot and a passageway had been in existence partly on each lot, G. L. (Ter. Ed.) c. 185, § 46, prevented an implied easement so to maintain the fire escape or any implied easement in the passageway from arising in favor of the first lot against the second lot in the possession of a purchaser who was not shown to have taken, otherwise than for value and in good faith, a certificate of title to the second lot on which no such encumbrances were noted.

Nothing appeared in a suit in equity to prevent the application of the general rule respecting trespassing structures by ordering the defendant to remove from a building on his land a fire escape which overhung adjoining land of the plaintiff nearly four feet.

A finding that laches barred a suit in equity by a landowner seeking to have the owner of adjoining land ordered to remove a fire escape overhanging the plaintiff's land was not justified by the mere fact that the plaintiff had delayed bringing the suit until a time when, "due to war conditions," the defendant "would find it exceedingly difficult if not impossible to make the change"; but such conditions might be taken into account by the trial court in fixing terms of the decree ordering the removal.

The issue of alleged laches on the part of a landowner, plaintiff in a suit in equity to have the owner of adjoining land ordered to remove a

fire escape which had overhung the plaintiff's land for many years before the plaintiff acquired title, must be determined on the basis of the plaintiff's own conduct without regard to possible delays on the part of his predecessors in title.

BILL IN EQUITY, filed in the Superior Court on August 4, 1941.   The suit was heard by *Cabot*, J.

*G. L. Rabb*, for the plaintiff.

*C. J. Miller*, for the defendant Beal.

SPALDING, J.   By this bill in equity the plaintiff seeks a mandatory injunction ordering the defendant Beal (hereinafter called the defendant) [1] to remove from his building a fire escape which, it is alleged, extends over the land of the plaintiff; she also asks to have the defendant's building removed to the extent that it encroaches upon a passageway adjoining her land on the ground that it interferes with her "rights of free and unobstructed use of air, light, and passage." From a final decree dismissing the bill and granting certain relief to the defendant on his counterclaim the plaintiff appeals.

The evidence is reported and the trial judge filed a statement of "findings, rulings and order for decree." The pertinent facts, concerning which there is no dispute, are these: The plaintiff owns land which is bounded on the northeast side by land of the defendant. Both titles are derived from a common owner in the following circumstances: Prior to May 20, 1916, the lots now owned by the plaintiff and the defendant were parts of a larger parcel owned by one Shapira as trustee of the City and Suburban Real Estate Trust. On May 20, 1916, Shapira filed a petition in the Land Court for the registration of title to this parcel as shown on a plan which was filed with the petition. The lots of the plaintiff and the defendant formed a part of lot A included in that plan but were not set off as separate lots. At approximately the same time Shapira conveyed lot A to one Maguire. On January 17, 1917, the Land Court issued a decree of registration of title to lot A on Shapira's petition but in the name of Maguire, whose name had been

---

[1] The Boston Penny Savings Bank, which holds a mortgage on the premises of the defendant, is also named as a defendant.

substituted as owner.  Prior to this decree Maguire obtained permission from the city of Boston to build two buildings on lot A.  One of the buildings stands on the land now owned by the defendant and was completed on March 24, 1917; the other building is on land now owned by the plaintiff and was completed on May 5, 1917.

On September 29, 1917, a plan (dated May 17, 1916) was referred to in a certificate of title of one Brown, who then owned lot A, as hereinafter stated.  By this plan lot A was subdivided into three lots: A1, A2 and A3.  The plaintiff is the owner of lots A2 and A3 and the defendant owns lot A1.  Lots A1 and A2 are contiguous and the controversy in this case concerns them.

The subdivision plan shows a passageway eleven feet wide between lots A1 and A2 running from Allston Street. to a twelve-foot passageway [1] in the rear.  Of this eleven-foot passageway, according to the subdivision plan, six feet are on lot A1 owned by the defendant and five feet are on lot A2, the plaintiff's lot.  The building plans filed with the city contemplated that the proposed building on lot A1 was, on the southwesterly side, to be adjacent to the edge of the eleven-foot passageway;  the northeasterly side of the proposed building on lot A2 was likewise to be adjacent to the edge of the passageway.  Thus, had the buildings been erected as contemplated by the building plans, neither building would have encroached upon this passageway.  However, when the buildings were built they did not conform to the building plans, each building being placed approximately five feet three inches to the southwest of the position contemplated in the plans.  As a result the building on lot A1 extends into the eleven-foot passageway shown on the subdivision plan approximately five feet three inches throughout its entire length, that is, from Allston Street to the twelve-foot passageway in the rear.  This building, except as to the fire escape, hereinafter discussed, is approximately nine inches from the property line between lots A1 and A2.

---

[1] There is no controversy concerning this passageway.

The structure on each lot is a three-story brick building used as an apartment house, and neither has been changed in any substantial respect since it was built. The defendant's building when erected had a metal fire escape on the side adjacent to lot A2 which has remained there ever since. It is of the usual open work iron type and extends from the third story to within forty-three and one half inches from the ground. From the front to the rear it is seventeen feet long and it projects out from the wall of the building four and one half feet, with the result that it extends beyond the lot line between lots A1 and A2 to the extent of three feet nine inches for its entire length.

There is at the present time a passageway between the two buildings running from Allston Street to the twelve-foot passageway in the rear, although not in the same position as that designated in the subdivision plan. In addition to the fire escape which hangs over the present passageway, a flight of concrete steps slightly over eleven feet long extends into it from the plaintiff's building to the extent of three feet three and five eighths inches, leaving a space of forty inches between the steps and the fire escape. The steps, however, are entirely on the plaintiff's land and do not extend into the passageway designated on the subdivision plan.

The plaintiff holds a transfer certificate of title to lots A2 and A3 dated July 27, 1933. The defendant holds a transfer certificate of title to lot A1 dated December 13, 1929. Each certificate referred to the lot or lots included therein as those shown on the subdivision plan.[1] Prior to the times that the plaintiff and the defendant acquired title to her or his respective lot, there had been several transfers of title to each lot; each of the transfer certificates contained a reference to the subdivision plan similar to that appearing in the certificates of the plaintiff and the

---

[1] In the plaintiff's certificate the wording is as follows: "Said land is shown as lots A–2 and A–3 on a subdivision plan drawn by Fuller-Whitney Surveys Corpn., dated May 17, 1916, as approved by the court, filed in the Land Registration Office as plan No. 5947–C, a copy of a portion of which is filed with certificate of title No. 9514." Similar wording appears on the defendant's certificate except that it refers to lot A1.

defendant. With exceptions not here material, no easements in favor of or as an encumbrance on either lot were noted on the plaintiff's or the defendant's certificate.

A final decree was entered dismissing the bill with costs to the defendant Beal; it further provided that the defendant Beal has the right to maintain his building and fire escape as they now exist, and that the plaintiff execute within thirty days "an instrument of conveyance so that the passageway between lots A1 and A2 . . . [as shown on the subdivision plan filed in the Land Court] may be established as of record as it now exists in fact, including an easement appurtenant to said Lot A1 for the maintenance of a fire escape substantially as it now exists as described in the findings, rulings and order for decree."

1. No easement in favor of either lot was acquired with respect to the eleven-foot passageway designated on the subdivision plan. The Land Court by its original decree of registration issued to Maguire created no easements or rights with reference to the eleven-foot passageway. So long as there was a common ownership of the two parcels there could be no easement in favor of one lot operating as a burden on the other. *Johnson* v. *Jordan*, 2 Met. 234, 239. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105. *Oldfield* v. *Smith*, 304 Mass. 590, 593. If any easement came into existence it was only upon a severance of the common ownership. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105. *Ansin* v. *Taylor*, 262 Mass. 159, 164. There was such a severance when the common owner, who was then Brown, gave a mortgage of lot A1 to the Boston Mortgage Bond Company, and a mortgage of lots A2 and A3 to the Mooneys. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 106–108. These mortgages were registered on September 29, 1917, and reference was made in them to the subdivision plan. As stated above, there had been such a reference in the certificate of Brown, the common owner and mortgagor, bearing the same date. The plan had not previously been referred to in any registered deed; thereafter it was mentioned in all deeds and certificates, including those

of the plaintiff and of the defendant. Did these references
to the subdivision plan operate to give to each parcel an
easement in the passageway set forth in the plan?    We
think that they did not.

A plan referred to in a deed becomes a part of the con-
tract so far as may be necessary to aid in the identification
of the lots and to determine the rights intended to be
conveyed.   *Boston Water Power Co.* v. *Boston,* 127 Mass.
374, 376.   *Downey* v. *H. P. Hood & Sons,* 203 Mass. 4, 10.
*Carroll* v. *Hinchley,* 316 Mass. 724, 729, and cases cited.
"The purpose and effect of a reference to a plan in a deed,
is a question of the intention of the parties."   *Regan* v.
*Boston Gas Light Co.* 137 Mass. 37, 43.   *Wellwood* v. *Hav-
rah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350,
354.   "In determining the intent, the entire situation at
the time the deeds were given must be considered.   For
example, whether the ways in question merely existed on
paper, or were then constructed on the ground; whether
they were then actually used as appurtenant to the granted
premises; or whether they were remote or in close prox-
imity."   *Prentiss* v. *Gloucester,* 236 Mass. 36, 52–53.   *Well-
wood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254
Mass. 350, 355.

In general the same principles that govern the effect to
be given a plan in the case of unregistered land apply
where the land is registered.   *Dubinsky* v. *Cama,* 261 Mass.
47, 53.   These principles are now well established.   The
difficulty is in applying them to a particular set of facts.

The plaintiff has directed our attention to cases holding
that, where land situated on a street is conveyed according
to a recorded plan on which the street is shown, the grantor
and those claiming under him are estopped to deny the
existence of the street for the entire distance as shown on
the plan.   See *Farnsworth* v. *Taylor,* 9 Gray, 162; *Fox* v.
*Union Sugar Refinery,* 109 Mass. 292; *Langmaid* v. *Hig-
gins,* 129 Mass. 353, 356; *Drew* v. *Wiswall,* 183 Mass. 554;
*New England Structural Co.* v. *Everett Distilling Co.* 189
Mass. 145, 151, 152; *Downey* v. *H. P. Hood & Sons,* 203
Mass. 4, 10.   This undoubtedly is a well settled principle

in conveyancing, and nothing herein decided is intended to impair it. It is not applicable, however, to the case at bar. But even this rule is not without limits. See *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350. In that case, at page 355, it was pointed out that in the cases in which this rule has been applied it will usually appear that the way referred to is in use or actually staked out on the land. See, for example, *Rodgers* v. *Parker*, 9 Gray, 445; *Stetson* v. *Dow*, 16 Gray, 372; *Franklin Ins. Co.* v. *Cousens*, 127 Mass. 258; *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145; *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4.

In the case under consideration the passageway in question never in fact existed on the land. At the time of the severance of the common ownership above referred to, the buildings had been erected in their present position, and the passageway outlined on the plan could not have come into existence in fact without removing nearly six feet of the building now owned by the defendant. We are aware that in other circumstances a reference to a plan in a deed on which a passageway is designated may be sufficient to create rights in it. See *Lagorio* v. *Lewenberg*, 226 Mass. 464; *Dubinsky* v. *Cama*, 261 Mass. 47. But we think on the facts here that the trial judge was right in concluding that "the passageway between lots A1 and A2 as contemplated by the plan of subdivision . . . never came into existence and the plaintiff has no rights therein."

2. The final decree provided that the defendant has the right to maintain the fire escape on his building in the position in which it now is. We think this was error. As pointed out above, the fire escape in its present position extends over the plaintiff's land for three feet nine inches. The defendant contends that the right to maintain the fire escape in this manner was an easement appurtenant to lot A1. We assume in the defendant's favor that if the plaintiff's land were not registered an appurtenant easement in favor of the defendant's land to maintain the fire escape would exist by implication after a severance of the common ownership. See *Mt. Holyoke Realty Corp.* v. *Hol-*

*yoke Realty Corp.* 284 Mass. 100. And the fact that the defendant's lot is registered land does not prevent such an easement attaching as appurtenant to it even though, as here, the certificate makes no mention of it. *Dubinsky* v. *Cama,* 261 Mass. 47, 56–57. But as that case pointed out, "No easement can pass as appurtenant affecting registered land as the servient estate, which is not disclosed on its title as registered." It is provided in § 46 of G. L. (Ter. Ed.) c. 185 that "Every petitioner receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate," with certain exceptions not here material. Nothing appears on the original certificate or on any transfer certificate relating to lot A2 that subjects it to any easement with respect to the fire escape. Since the defendant contends that the fire escape rightly extends over the plaintiff's land by virtue of an easement, he has the burden of establishing it. *Swensen* v. *Marino,* 306 Mass. 582, 583. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105. There is no evidence that would support a finding that the plaintiff in acquiring lot A2 was other than a purchaser for value and in good faith. She is therefore entitled to hold the property free from encumbrances not noted on her certificate. Nor was an easement acquired by adverse possession in view of G. L. (Ter. Ed.) c. 185, § 53, which provides that "No title to registered land, or easement or other right therein, in derogation of the title of the registered owner, shall be acquired by prescription or adverse possession." *New York Life Ins. Co.* v. *Embassy Realty Co. Inc.* 289 Mass. 528, 530.

The fire escape, extending as it does over land of the plaintiff, constitutes a trespass and the plaintiff is entitled to have it removed. *Zimmerman* v. *Finkelstein,* 230 Mass. 17. *New York Central Railroad* v. *Ayer,* 239 Mass. 70. *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 108–110, and cases cited. In the *Geragosian* case it was said at page 109, "The facts that the aggrieved owner suffers little or no

damage from the trespass . . . [and] that the wrongdoer acted in good faith and would be put to disproportionate expense by removal of the trespassing structures . . . are ordinarily no reasons for denying an injunction. Rights in real property cannot ordinarily be taken from the owner at a valuation, except under the power of eminent domain. Only when there is some estoppel or laches on the part of the plaintiff . . . or a refusal on his part to consent to acts necessary to the removal or abatement which he demands . . . will an injunction ordinarily be refused. . . . The general rule is that the owner of land is entitled to an injunction for the removal of trespassing structures." To the same effect are *Westhampton Reservoir Recreation Corp.* v. *Hodder,* 307 Mass. 288, *Ferrone* v. *Rossi,* 311 Mass. 591, 593, and *Beaudoin* v. *Sinodinos,* 313 Mass. 511, 519.

It is true that there have been cases, [1] which strictly speaking do not come within the above mentioned exception to the general rule, where due to special circumstances relief has been denied. Some of these cases are applications of the de minimis principle; others depend on their peculiar facts which do not exist here. There is nothing in the record to take the present case out of the general rule.

3. The decree was wrong in ordering the plaintiff to execute an instrument of conveyance so that the passageway between lots A1 and A2 be established as of record as it now in fact exists. The passageway as it now exists is approximately eleven feet wide between the walls of the plaintiff's and the defendant's buildings and all but nine inches of it is on the plaintiff's land. No easement was ever acquired by the defendant in this passageway. Such an easement, as pointed out above, can be acquired only if it is disclosed on the certificate of title to the lot which is subjected to it. *Dubinsky* v. *Cama,* 261 Mass. 47. G. L. (Ter. Ed.) c. 185, §§ 45, 46, 57. Since no such encumbrance

---

[1] *Brande* v. *Grace,* 154 Mass. 210. *Lynch* v. *Union Institution for Savings,* 159 Mass. 306. *Harrington* v. *McCarthy,* 169 Mass. 492. *Cobb* v. *Massachusetts Chemical Co.* 179 Mass. 423. *Levi* v. *Worcester Consolidated Street Railway,* 193 Mass. 116. *Kendall* v. *Hardy,* 208 Mass. 20. *Loughlin* v. *Wright Machine Co.* 273 Mass. 310. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 11. *Gray* v. *Howell,* 292 Mass. 400, 403, 404. *Triulzi* v. *Costa,* 296 Mass. 24, 28.

is noted on the plaintiff's certificate the court below was
without authority to create one. To hold otherwise would
defeat the purpose of the land registration act.

4. The remaining question is whether the plaintiff is
barred by laches, which was pleaded by the defendant.
The judge found that she was. He found, however, that
the defendant has "not been prejudiced in any way by the
delay except that, due to war conditions, . . . [he] would
find it exceedingly difficult if not impossible to make the
change which would be necessary were the plaintiff given
the relief which she seeks."

The facts with reference to this aspect of the case, which
are not in dispute, are as follows: The plaintiff acquired
title to lot A2 in 1933. In 1935 she consulted counsel, and
in 1937 she had the property surveyed. The bill in equity
in this case was filed on August 4, 1941. "The question of
laches is one of fact, and is as fully open before us on the
evidence as it was before the judge." *Beaudoin* v. *Sinodi-
nos,* 313 Mass. 511, 519. Mere delay not extending beyond
the period of the statute of limitations does not constitute
laches. There must be delay that works some prejudice
or disadvantage to the defendant. *Calkins* v. *Wire Hard-
ware Co.* 267 Mass. 52, 69. *Westhampton Reservoir Recrea-
tion Corp.* v. *Hodder,* 307 Mass. 288. *Norton* v. *Chioda,
ante,* 446. The only prejudice to the defendant is that due
to war conditions it would be difficult to comply with a
decree ordering the removal of the fire escape. No doubt
that is an important factor to be considered by the court
below in the enforcement of such a decree. But we cannot
assume that these conditions will be permanent. Conse-
quently the plaintiff should not because of that fact be
barred from relief to which she otherwise would be entitled.
The defendant has argued that the delay of the plaintiff's
predecessors in title should be imputed to her in considering
the question of laches. We do not agree. The presence of
the fire escape over the plaintiff's land constitutes a con-
tinuing trespass and she is entitled to have the question of
laches determined on the basis of her own conduct; she
should not be chargeable with the delay of her predecessors

in title, if there was any. This conclusion is not inconsistent with anything decided in *Tetrault* v. *Fournier,* 187 Mass. 58, *Fennyery* v. *Ransom,* 170 Mass. 303, *Hermanns* v. *Fanning,* 151 Mass. 1, and *Learned* v. *Foster,* 117 Mass. 365, cited by the defendant. The finding that the plaintiff was barred by laches was error.

The final decree is reversed and a new decree is to be entered ordering the removal of so much of the defendant's fire escape (under such terms and conditions as the Superior Court deems proper in view of war time conditions) as extends over the plaintiff's land, with costs to the plaintiff.

*So ordered.*