Scagel v. Jones.

RAYMOND W. SCAGEL & another *vs.* KATHERINE M. JONES.

Hampshire.    December 2, 1968. — Januay 13, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Easement. Way,* Private: creation.

Where it appeared in a suit in equity that the plaintiffs were owners of five numbered lots shown, on a recorded plan, extending southerly from a public way and adjacent on their west sides to an unnumbered, unmarked forty foot strip owned by the defendant, that the only access to the rear four lots was over the strip, that the five lots and the strip had once been in common ownership, that when the five lots were sold from the common ownership they were described in the deeds only by references to their lot numbers on the recorded plan, and that at all times land fronting on a public way was adjacent to each of the four rear lots of the plaintiffs and in common ownership therewith, it was held that a right of way over the strip was appurtenant to each of the plaintiffs' five lots.

PETITION IN EQUITY filed in the Probate Court for the county of Hampshire on July 1, 1965.

The suit was heard by *Jekanowski, J.*

The case was submitted on briefs.

*Alvertus D. Morse & Alvertus J. Morse* for the defendant.

*Raymond R. Cross* for the plaintiffs.

WHITTEMORE, J.   This is an appeal from a decree in equity in the Probate Court for Hampshire County which establishes a right of way of the plaintiffs in a forty foot wide strip owned by the defendant adjacent on the west to the plaintiffs' property on the southerly side of Cross Street in that part of Northampton known as Florence.   The judge made a report of material facts.   The evidence is reported.

On the plan printed herewith, adapted from an exhibit, which is a copy of a plan recorded in 1932, the plaintiffs'

land is shown as lots 36, 37, 39, 41 and 43, and land of the
defendant is shown as the lot designated "Flynn" as well
as the adjacent unmarked strip. When the Flynn lot was
sold from common ownership of the entire tract in 1925 the
strip was designated on a recorded plan, duly referred to, as
a "proposed street." The same lots were shown on that
plan but were differently numbered. In 1932 a succeeding
owner of the tract advertised these lots and other land for
sale at auction, referring to the lots as "Building Lots" and

showing in the notice a "Plan in Sub-Division" like the plan recorded in that year. The absence of a number on the strip, read with the terms of the notice, in effect designated the strip as land not to be sold. .

Pursuant to sales at the auction, lots 37, 39, 40, 41, 42, 43 and 44 were conveyed to one grantee and lot 36 was conveyed to another. In the 1932 deeds and succeeding deeds the references were only to the 1932 plan, and the description was only by lot number. The purchaser of lot 36 later bought lot 37 from the first grantee. In 1933 the five lots bounding on the strip were combined in one ownership. The new owner first took title to lots 36 and 37 and later to lots 39, 41 and 43. The 1932 grantors retained title to the unmarked strip until 1962, when the defendant, then owning the Flynn lot, acquired it. Use has been made of the strip for over twenty years.

As the 1932 grantor sold with reference only to the 1932 plan which does not expressly designate the purpose of the strip and the deeds do not describe the lots as bounded thereon, and as each of the owners of the lots also owned adjacent land bounded on a public way, the defendant contends that there is no record easement in the strip appurtenant to the plaintiffs' lots. We disagree.

Even though not designated as a way on the plan, the forty foot wide strip was plainly intended to give access to. the rear lots bounding on it. There was no other way to reach them. Access was necessary and in the plan the grantor was recognizing that circumstance and was showing where the right of access lay. See *Farnsworth* v. *Taylor*, 9 Gray, 162, 163, as construed in *Williams* v. *Boston Water Power Co.* 134 Mass. 406, 415; *Regan* v. *Boston Gas Light Co.* 137 Mass. 37, 43.·

It is beside the point that, as it happened, at all times each of the interior lots now owned by the plaintiffs was adjacent to a lot or lots in common ownership therewith which did have frontage on a public way. Each of the interior lots was sold as a lot intended to be separately usable with reasonable access and the buyers of these lots bought them

with the appurtenant rights of access. It is well established that "where land is conveyed with reference to a plan, an easement other than an easement of necessity is created only if clearly so intended by the parties to the deed." *Rahilly* v. *Addison*, 350 Mass. 660, 662, and cases cited. In this case the need of access to the interior house lots shows the clear intention of the parties that the strip be used for that purpose. The easements were by implication of the conveyances. Restatement: Property, § 476, comment g.

There was no error in the decree. We need not consider whether such use as was made of the strip for over twenty years would have supported only the more limited easement to which the defendant contends the plaintiffs should be restricted.

*Decree affirmed with costs of appeal.*