John R. Duddy & others[1] *vs.* James J. Mankewich.

No. 08-P-1354.

Suffolk. April 14, 2009. - August 24, 2009.

Present: Kafker, Green, & Graham, JJ.

*Easement. Real Property,* Registered land: easement; Certificate of title; Encumbrance; Deed. *Way,* Private: extent.

A Land Court judge erred in issuing a decision on a case stated declaring that the defendant's registered land had no easement or right of way over the portion of a private way that ran southeast of his property and that fronted the plaintiffs' lots, where there were sufficient facts described on the parties' certificates of title that would have prompted the plaintiffs to investigate the issue, and where there were facts within the Land Court registration system available to the plaintiffs at the time of their purchases that would have led them to discover that their properties were subject to an encumbrance, even though that encumbrance was not listed on their certificates of title. [65-71]

Civil action commenced in the Land Court Department on May 22, 2002.

The case was heard by *Leon J. Lombardi,* J.

*Donald R. Pinto, Jr.,* for the defendant.

*Peter L. Puciloski (Richard M. Golder* with him) for the plaintiffs.

Kafker, J. The defendant, James J. Mankewich, appeals from a decision of the Land Court holding that his registered land in Scituate has no easement or right of way over the portion of a private way, Harbor Heights Road, that runs southeast of his property. For the reasons set forth below, we reverse.

We review the history of the property in some detail. On December 28, 1932, the Land Court issued an original certificate of title to William A. and Sarah Davidson (collectively referred

---

[1]Kathleen A. Duddy, Richard M. Golder, Shirley Golder, Raymond Sisk, Mildred Sisk, and Jay M. Jillson.

to as Davidson) for a large irregularly shaped parcel of Scituate land registered pursuant to G. L. c. 185 and depicted on Land Court Plan 14568A (plan A). The parcel is situated between Front Street to the east, Hazel Avenue to the west, and Willow Street (now known as Beaver Dam Road) to the north. All of the property at issue derives from this original parcel (Davidson parcel or parcel).

In 1942, Davidson began incrementally subdividing the parcel, starting with the eastern most section. Davidson subdivided the easterly portion of the parcel into five lots by virtue of Land Court Plan No. 14568B (B plan) and created Harbor Heights Road for a distance of some 468 feet. This early plan shows Harbor Heights Road as starting at Front Street and terminating at the end of the 468 feet. When conveying lots 2 through 4 on the B plan, Davidson was careful to retain the fee in Harbor Heights Road. By Land Court Plan 14568D (D plan), filed on July 24, 1944, Davidson created lots 6 through 19 on the portion of the parcel immediately west of the lots shown on the B plan. Harbor Heights Road is shown on the D plan as no longer terminating at 468 feet but as continuing in a westerly direction, providing frontage for lots 6 through 19, and extending, open-ended, a short way into the remaining westerly portion of the Davidson parcel. The plaintiffs all own parcels depicted on the D plan.

By virtue of Land Court Plan 14568I (I plan),[2] filed with the Land Court on November 14, 1945, Davidson further subdivided the remaining westerly portion of the Davidson parcel into ten additional lots.[3] The I plan depicts Harbor Heights Road as extending westerly through the remainder of the Davidson parcel and intersecting with Hazel Avenue, which runs along the westerly boundary of the Davidson parcel. All but one of the lots depicted on the I plan are shown as having frontage on Harbor Heights Road. The judge found that the registry district mailed a

---

[2]We reproduce in the appendix to this opinion illustrative portions of the D plan and the I plan.

[3]The I plan created lots 23 through 32. Further subdivision of the Davidson parcel created lot 20 by virtue of Land Court plan 14568G dated July 30, 1945, and lots 21 and 22 by virtue of Land Court plan 14568H dated October 16, 1945.

postcard postmarked March 17, 1947, to the Land Court indicating that the I plan had been filed with Certificate No. 11323.

When, on September 24, 1945, Davidson[4] originally conveyed the lots now owned by the plaintiffs Raymond and Mildred Sisk, lots 15-18 on the D plan, he referred to the D plan and described the lots as bounded by Harbor Heights Road, but did not include an express right of way in the deed and no right of way or relevant encumbrance is reflected on the certificate of title.[5] The Sisk plaintiffs are the only plaintiffs whose predecessors purchased lots before the I plan was filed with the Land Court. Davidson transferred lots 7, 8, 12, and 19 on the D plan on December 10, 1945, and on December 11, 1945, Davidson transferred lot 11 to Alice M. Cashman. These transfers contained an express right of way over Harbor Heights Road in the deeds. Plaintiff Jay M. Jillson now owns lots 7 and 8, plaintiffs Richard M. and Shirley Golder now own lots 12 and 19, and plaintiffs John R. and Kathleen A. Duddy now own lot 11. The certificates of title to lots 7, 8, 11, 12, and 19, however, do not note that others have rights to pass over the portion of Harbor Heights Road that front the lots and do not mention the right of way.[6] Indeed, of the fourteen lots created by the D plan, eight of the original deeds from Davidson contain an express right of way over Harbor Heights Road while six were conveyed without any express right of way. Even where the deeds expressly provided a right of way, however, it is not noted on the certificate of title and, more importantly, there is no corresponding encumbrance noted on

[4]The record reflects that Sarah Davidson died on February 28, 1945. Thereafter, all conveyances were made by William Davidson alone.

[5]Davidson first conveyed lots 15-18 on the D plan to Frederick and Pauline Merrill and the deed was silent as to easement rights. When the Merrills conveyed the property to the next owner in the chain of title, they added right of way language: "Together with a right of way over said Harbor Heights Road as shown on said plan together with others legally entitled thereto with the right to install all public utilities therein, so far as these grantors have the right to grant same." The Sisk certificate of title states that a right of way over Harbor Heights Road is appurtenant to the lots. The judge found that the Merrills had no right to grant an express right of way to their grantees.

[6]"However desirable it may be that the . . . certificate of title should disclose the whole state of the title, including all easements appurtenant," G. L. c. 185 requires only easements to which the registered land is subject be set out in the certificate of title. *Dubinsky* v. *Cama*, 261 Mass. 47, 56-57 (1927). Easements benefitting the property need not be noted.

certificates of title of the owners of the remainder of the way. Nor do any of the deeds or certificates of title reflect language indicating that the grantor reserved rights in the way for any of his remaining land, whether shown on the D plan or the I plan.

On January 7, 1947, Davidson's guardian, pursuant to a license to sell from the Probate Court, conveyed lots 23-32 on the I plan to Roscoe Davidson. The deed describes the lots as bound by Harbor Heights Road but does not include an express right of way. The defendant now owns lots 23, 25, 26, and 28-32 on the I plan and seeks to access the lots over Harbor Heights Road from Front Street. Presently, Harbor Heights Road has not been constructed on the ground past the lots shown on the D plan.

The plaintiffs commenced this action seeking a declaratory judgment that the defendant has no interest in or rights over the portion of Harbor Heights Road that fronts their property, damages for trespass, and injunctive relief. They contend that they own to the center of the portion of Harbor Heights Road that fronts their property and that because their certificates of title do not reflect an encumbrance for the benefit of the defendant's land, the defendant has no easement or right of way over Harbor Heights Road.[7] They further contend (and the judge so found) that, notwithstanding the absence of an encumbrance noted on the certificates of title for the lots shown on the D plan, each of the lots is encumbered by a right of way for the other lots depicted on the D plan under principles of estoppel. These rights, they argue, do not extend to the defendant. The judge, issuing a decision on a case stated, essentially agreed and declared that none of the defendant's lots enjoys a right of way over Harbor Heights Road and enjoined the defendant from using the portion of Harbor Heights Road that fronts the plaintiffs' lots.[8] The defendant now appeals.

*Discussion.* "Because we have a decision on a case stated,

---

[7]The parties and the judge all have proceeded on the premise that the plaintiffs own the fee to the center line of Harbor Heights Road as it abuts their respective lots. In the absence of a challenge by any party, we proceed on the same premise.

[8]The judge dismissed the trespass count noting that no evidence of damages had been submitted and that the court lacks jurisdiction to award damages for trespass. The plaintiffs did not appeal from this portion of the decision.

'we deal with it anew, unaffected by any conclusions of law or inferences drawn by the judge in the Land Court.' " *Reagan* v. *Brissey*, 446 Mass. 452, 458 (2006), quoting from *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974). As the party claiming an easement or right of way, it is well settled that the defendant bears the burden of proving its existence. *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 629 (1990). Here, where the right of way must derive first from a presumed reservation of rights by the grantor over his remaining land, it may be "more difficult to imply an easement by reservation for the grantor's benefit than an easement by grant for the grantee's benefit." *Cheever* v. *Graves*, 32 Mass. App. Ct. 601, 608 (1992).

In the absence of an express easement, the theories available to impose an easement or right of way on registered land are limited as registration of land under G. L. c. 185 provides certain protections. For example, pursuant to G. L. c. 185, § 53, amended by St. 1921, c. 117, no easement or other rights may be acquired on registered land "by prescription or adverse possession [and no] right of way by necessity shall be implied under a conveyance of registered land." "Holders of a certificate of title take 'free from all encumbrances except those noted on the certificate.' " *Jackson* v. *Knott*, 418 Mass. 704, 710 (1994), quoting from G. L. c. 185, § 46, amended by St. 1987, c. 455.

Given the lack of encumbrance noted on *any* of the properties that front Harbor Heights Road, it is fortunate for all of the parties that recognized exceptions to this rule exist. See *id.* at 711.[9] The first exception provides that "[i]f there [are] facts described on [a] certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system," the purchaser is obligated to investigate. *Ibid.*[10] "In considering [this] exception, we ask whether there were facts within the Land Court registration system available to [the plaintiffs] *at the time of their purchases*, which would lead them to discover that [their properties] were subject to an

---

[9]Indeed, the plaintiffs' own rights to use Harbor Heights Road for access to their respective properties would not exist, but for such exceptions.

[10]In the absence of any suggestion in the record that the plaintiffs had actual notice of easement rights in the defendant, the second exception does not apply.

encumbrance, even if that encumbrance was not listed on their certificates of title" (emphasis added). *Ibid.* We conclude that there were sufficient facts that would have led these plaintiffs to conclude that the portion of Harbor Heights Road that fronts their property is encumbered by a right of way for access to the defendant's property.

Given the deficiencies in the certificates in failing to note any encumbrances and the express reference to the D plan, the plaintiffs would have been obligated to review the D plan to determine both their own rights over Harbor Heights Road and whether others had rights over the road. See *ibid.* "A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed." *Goldstein* v. *Beal*, 317 Mass. 750, 755 (1945). See *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. 725, 728 (1971). " 'The purpose and effect of a reference to a plan in a deed, is a question of the intention of the parties.' *Regan* v. *Boston Gas Light Co.*, 137 Mass. 37, 43 [1884]. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350, 354 [1926]." *Goldstein* v. *Beal*, 317 Mass. at 755. Indeed, "[i]t is well established that 'where land is conveyed with reference to a plan, an easement is . . . created only if clearly so intended by the parties to the deed.' " *Jackson* v. *Knott*, 418 Mass. at 712, quoting from *Scagel* v. *Jones*, 355 Mass. 208, 211 (1969). It has been said, however, that a right of way shown on a plan becomes "appurtenant to the premises conveyed as clearly as if mentioned in the deed." *Lagorio* v. *Lewenberg*, 226 Mass. 464, 466 (1917).

We focus our attention, therefore, on the intent of the parties as may be ascertained from the materials in the registration system. See *Jackson* v. *Knott*, 418 Mass. at 711 (owners of registered land obligated to review only documentation within the registration system). We begin with the plaintiffs' own properties, the deficiencies in their certificates of title, and the reasons why those deficiencies are not outcome determinative in regard to the plaintiffs' own easement rights. In particular, no encumbrance is noted on the certificates of title of any of the lots shown on the D plan indicating that other lots have an easement or right of way over Harbor Heights Road. The judge nonetheless concluded that

despite these deficiencies Davidson had to have intended an easement for the benefit of each of the lots on the D plan. We agree. Davidson's intent is established by the following: the description of the lots as bounding on the way and the reference to the D plan in the certificates of title, the D plan's depiction of Harbor Heights Road as providing frontage for each lot and access to the public way, and the absence of reasonable alternative access. This intent was clear notwithstanding that Davidson transferred individual lots often without either expressly reserving rights in the way or expressly granting a right of way. See *Scagel* v. *Jones,* 355 Mass. at 210; *Cheever* v. *Graves,* 32 Mass. App. Ct. at 608.

While relying themselves on the clear intent of the grantor as evidenced by the D plan to come within the first *Jackson* exception for rights over all of Harbor Heights Road for access to their own lots, the plaintiffs insist that the absence of an encumbrance noted on their certificates of title should be strictly construed to prohibit the defendant from using Harbor Heights Road to access his lots. We disagree. Review of the D plan would also have put these plaintiffs on notice that Harbor Heights Road continued into Davidson's remaining land. Notwithstanding the plaintiffs' assertions to the contrary, the D plan clearly depicts Harbor Heights Road as proceeding, open-ended, a measurable distance into Davidson's remaining land.[11] The plaintiffs would have been obligated to search the registration system for certificates or plans to determine whether others have rights over Harbor Heights Road. Further inquiry would have led to the I plan. To the extent the D plan left room for doubt, the I plan would have clarified the grantor's intent and provided notice to the plaintiffs that the lots depicted on the I plan rely on Harbor Heights Road for access to the public way. The rights claimed by the defendant would be no different than the rights claimed by the plaintiffs. That the defendant could have accessed the public way over Harbor Heights Road in either direction does not negate his right to access it from Front Street. See *Casella* v. *Sneierson,* 325 Mass. 85, 91 (1949).

Although the Supreme Judicial Court has identified the date the plaintiffs purchased their property as the operative date for

---

[11]The plaintiffs offer no support for their contention that the way continues on the plan only to provide markers for the width of the road.

application of the first exception to the rule that encumbrances must be noted on the certificate of title to bind registered land, *Jackson* v. *Knott*, 418 Mass. at 711, the plaintiffs contend that no easement may burden their properties where their predecessors purchased their lots before the I plan was available for review in the registration system insofar as the Land Court file reflects that the I plan was not filed with a certificate of title in the registry district until March 17, 1947. While the I plan certainly confirmed for these plaintiffs the intention that all of Davidson's registered land would have access rights over Harbor Heights Road, we view the information in the registration system as sufficient to lead the original grantees to the same conclusion.[12]

It is true that a plan showing the line of a road as proceeding beyond the land conveyed does not automatically indicate a reservation of rights for the remaining land. See *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. at 728 (lot owner's rights in way that continues into abutting property not fully shown on plan may be proved with extrinsic evidence of the intent of the parties). The original grantees, however, would have had available to them the A plan, depicting all of Davidson's registered property, the B plan, showing the initial subdivision, and the D plan, showing a further subdivision including their lots and depicting Harbor Heights Road as extending open-ended into Davidson's remaining land for some distance. The extent of the remaining land would have been available to the plaintiffs' predecessors by review

---

[12]Concluding as we do that there was sufficient notice from the documents in the registry district to put the original grantees on notice of the grantor's intent, we need not resolve whether, as the defendant argues, the original grantees are charged with notice of the materials on file with the Land Court pertaining to Davidson's remaining land. See *Jackson* v. *Knott*, 418 Mass. at 711 (purchaser required to review documentation "within the registration system"). The plaintiffs suggest that charging a registered owner with notice of materials in the Land Court files in Boston, as part of the "registration system," imposes an undue burden on purchasers of registered land. We are not persuaded. As a threshold matter, we note that the heightened protection the plaintiffs seek to invoke arises solely by virtue of the status of the land as registered land; if the land were unregistered the defendant's easement rights could arise even without reliance on the presence of the I plan in the files of the Land Court in Boston. In seeking to invoke the heightened protections afforded to registered land, the plaintiffs ought not to be allowed to exclude self-selected portions of the registration system from the definition of its scope.

of the A plan. They would have been aware of the progression of the development of the original registered lot and the progressive extension of Harbor Heights Road. They also would have been aware that despite the clear intent to grant a right of way appurtenant to all of the lots on the D plan, Davidson had failed to reserve rights or otherwise explicitly express that intent in the deeds or certificates of title but relied, instead, on the D plan itself. That the D plan showed Harbor Heights Road as continuing into Davidson's remaining land was a clear indication in these circumstances that Davidson intended that lots to be carved out of the remaining land would also have rights over the way. In light of all of these factors, we think Davidson's intention to continue the way to provide access to lots created by subdivision of his remaining property was clear to the original grantees.[13]

The plaintiffs argue that because Hazel Avenue abutted Davidson's property to the west, the owners of lots depicted on the D plan would not have concluded that the way would continue to Hazel Avenue. To the contrary, the status of the documents in the registration system at the time the lots from the D plan originally were transferred gave no indication of any intention to create any ways other than a continuation of Harbor Heights Road. Had Davidson intended to stop the way at the end of the D plan, he would not have depicted it as continuing into the remaining property. Similarly, the narrow, twelve-foot wide way running in a north-south direction on the defendant's property was shown on the property beginning with the A plan. There was no indication of an intent to use that way to access the remainder of the property.

---

[13]In reaching our decision here today, we have focused, as the court did in *Jackson* v. *Knott*, on the intent of the parties as shown by documents and plans in the registration system. To the extent principles of estoppel apply to registered land, compare *Jackson* v. *Knott*, 418 Mass. at 714 n.7 (suggesting estoppel has never been applied in registered land cases absent actual notice) with *Lane* v. *Zoning Bd. of Appeals of Falmouth*, 65 Mass. App. Ct. 434, 437-438 (2006) (applying estoppel theory where plan referred to in certificate of title put plaintiffs on notice that way abutting their properties extended some thirty feet into defendant's land), we discern no meaningful distinction in the detail of the D plan and the plan at issue in *Lane*. In fact, we agree with the defendant that the measurable, open-ended depiction of the way on the D plan shows even more clearly than in *Lane* the grantor's intent to continue the way into his remaining land where it would provide access to owners of any eventual subdivision lots.

Concluding as he did that the defendant enjoys no rights over Harbor Heights Road, the judge enjoined the defendant from traveling over the portion of Harbor Heights Road from his lots to Front Street. For the foregoing reasons, we vacate the injunction, and reverse the order declaring that the defendant's lots do not "enjoy[] a right of way or easement of access over Harbor Heights Road."

*So ordered.*