ANN JO JACKSON & others[1] vs. JAMES M. KNOTT
& another.[2]

Suffolk. April 7, 1994. - October 6, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Easement. Real Property,* Easement,
Certificate of title, Encumbrance, Registered land. *Way,* Private:
extent.

No easement for passage was established over a way generally referenced
as a boundary on certificates of title to certain adjacent parcels of regis-
tered land where no such easement was expressly described on the cer-
tificates as required by G. L. c. 185, § 47. [709-710]
The record of registration of two parcels of land and other property in a
subdivision did not disclose any facts to indicate that the owners of the
two parcels took title subject to an easement for passage for the benefit
of other property owners over a way bounding their lots [710-713], nor
was it shown that the owners of the two parcels had any actual knowl-
edge of a prior unregistered document creating such an easement in the
way. [713-714]

CIVIL ACTION commenced in the Land Court Department
on May 12, 1992.

The case was heard by *Peter W. Kilborn,* J., on a motion
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Warren G. Miller* for James M. Knott.
*Marc N. Sandler* for Bruce W. Bemis.
*Michael H. Arwe* for the plaintiffs.

---

[1]Florence E. Freeman, Constance H. Rohrbough, Robert W.
McNamara, Mary L. McNamara, Mary Elizabeth Lorraine Ramsay,
Mary E. Hemeon, Arthur A. Socolow, and Edith S. Socolow.
[2]Bruce W. Bemis.

*Michael P. Healy, John A. Pike & Norman T. Byrnes*, for Massachusetts Conveyancers Association & another, amici curiae, submitted a brief.

GREANEY, J. These nine plaintiffs brought this action in the Land Court seeking, among other relief, a declaration pursuant to G. L. c. 231A (1992 ed.) that an easement exists in their favor over the land of the defendants, James M. Knott and Bruce W. Bemis. The defendants own adjacent beachfront lots in Gloucester which are registered under G. L. c. 185 (1992 ed.), the Land Registration Act. Along the boundary between the two lots is a twenty-foot-wide unnamed private way (Way) that passes from the beach to a large private way, used by the public, and a series of ways and streets to which the plaintiffs have access. It is in and over the Way to the beach that the plaintiffs contend they have an easement. The plaintiffs, and the defendant Knott, moved for summary judgment, and a judge of the Land Court granted the plaintiffs' motion. See Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974). The defendants appealed, and we granted their application for direct appellate review. We conclude that the plaintiffs should not have been granted summary judgment, and that summary judgment should have been entered for both defendants.[3]

We summarize the facts under the standard applicable to a rule 56 motion. See *Alioto* v. *Marnell*, 402 Mass. 36, 37 (1988). We note also that the parties have stipulated that "[t]here are no genuine issues as to any material facts relating to this controversy," and the judge determined that the case was an appropriate one for disposition by summary judgment.

---

[3]Decision of the appeal has been delayed because of an order of this court dated June 20, 1994, which requested the Massachusetts Conveyancers Association and The Abstract Club, as amici curiae, to file a brief. The amici were consulted because the question whether there may be an easement over registered land, when the alleged easement is not listed on the certificates of title of the servient estates or the alleged dominant estates raises issues of considerable importance to the conveyancing bar. We express our gratitude to the Massachusetts Conveyancers Association and The Abstract Club for their joint brief, as amici curiae.

The plaintiffs and the defendants own property in a subdivision in Gloucester called Brier Neck. The southern boundary of each of the defendants' lots, and of several other lots in Brier Neck, is the Atlantic Ocean; the northern boundary of these lots is a private way, used by the public, known as Salt Island Road. Two subdivision plans for Brier Neck prepared in connection with land registration proceedings, one labeled 805F, dated November 11, 1908, and the other labeled 805S, dated May 1, 1919, show the Way between the two defendants' lots, passing from Salt Island Road to the ocean. A later subdivision plan, labeled 805-26, and dated July 20, 1942, contains a further subdivision, and shows the same Way, simply labeled "WAY." The lots on the southerly side of Salt Island Road face Little Good Harbor Beach. The plaintiffs whose properties do not front on this beach concede that they, and other similarly situated owners, have no rights to use the beach other than those which they enjoy, as members of the public, below the high water mark for boating, fishing, and fowling (but not for bathing). Two plaintiffs who have lots on the beach have rights to the part of the beach in front of their lots. There is also beach access by way of Witham Street, a public way.

Both of the Bemis and Knott certificates of title refer to the Way, for purposes of metes and bounds descriptions of their respective properties, but neither describes any easement over the Way. The certificate for lot 17 owned by Bemis, which lies to the west of the Way, describes his lot as bounded at its east "by an unnamed private way leading to the beach . . . ." With reference to the lot's boundary descriptions in general, the certificate states that "[a]ll of said boundaries, except the water line, [have been] determined by the [Land] Court to be located as shown upon plan numbered 805-26," the plan that shows the subdivision that created Bemis's lot. There is no further reference to the Way, but the certificate states that "[t]he above described land is subject to the reservations and provisions described in deed . . . dated July 22, 1913, and filed as Document 2491 in . . .

[the Southern Registry District of Essex County], so far as now in force."

The latter deed, from Frederic A. Shackelford and another to Jasper Stone, describes the boundaries of the original lot in part by reference to "a private way called Salt Island Road" and to "an unnamed private way leading to the beach." The deed then states the following:

> "Together with the right to pass and repass to and from the granted premises in and over said private ways called Salt Island Road and said unnamed private way, which said private ways are shown on said plan [805F].

> "The grantors reserve to themselves and their heirs and assigns of said tract of land the right to use that portion of said granted premises lying within the limits of said private ways for all purposes for which a public highway may lawfully be used."

Knott's certificate of title for lot 16 describes his land as bounded on the west "by a way . . . ." The certificate also refers to the second of the two Brier Neck subdivision plans, stating that "[a]ll of said boundaries are determined by the Court to be located as shown upon plan numbered 805-S." Like Bemis's certificate, Knott's certificate fails to mention any easement over the Way, but states that Knott's property is "subject to the reservations and provisions described in deed . . . dated June 7, 1919, and filed as Document #6134 in [the Southern Registry District of Essex County]."

The latter deed from Frederic A. Shackelford and another to Alva Morrison contains a description of lot 16, in part by reference to Salt Island Road and "a way". The deed then states the following:

> "Together with the right to pass and repass to and from the granted premises in and over said private way called Salt Island Road, as shown on said sub-division plan [805S].

"The grantors reserve to themselves and their heirs and assigns of said tract of land, the right to use that portion of said premises lying within the limits of said private way for any and all purposes for which a public highway may lawfully be used."

The grantors of the approximately sixty deeds to lots which were conveyed between 1907 (when lots in the subdivision were first conveyed), and 1919 (when lots 16 and 17 were first conveyed), carefully identified the private ways which were appurtenant to each lot. No grantor included any reference to the Way. For example, three deeds in 1908 and 1909 describe the lots conveyed as bounded by the Atlantic Ocean; each of them expressly granted rights of way only over those private ways deemed essential for access to the lot being conveyed, and the deeds made no reference to the Way. Similarly, fourteen deeds executed between 1910 and 1911, and sixteen conveyances between 1911 and 1912, followed the pattern of not mentioning the Way and expressly granted rights only in the private ways considered essential for access to the lot conveyed. The conveyances of two lots (lots 79 and 78A) which are directly opposite the Way, make no mention of the Way. Each of these deeds, however, carefully grants "the right to pass and repass to and from the granted premises in and over said private ways called Brier Neck Road and Salt Island Road, which private ways are shown on . . . plan [805F]." No precise reference to the Way appears in any deed, or in any certificate of title, except the deeds and certificates to lots 16 and 17. By way of additional comparison, another deed given in 1912 to lot 98 contains an express easement of passage "to and from the beach by a private way ten (10) feet wide to be laid out from said Salt Island Road Southerly to the beach, at a point between Lot No. 98 and Lot No. 17." The ten-foot way referred to was never laid out.

Stairs leading to the beach were constructed proximate to the Way in approximately 1919, and the plaintiffs' complaint states that the Way has been used by them, their predeces-

sors, and others "for over sixty years as a means of access to the Atlantic Ocean." In 1953, however, prior to Knott's acquisition of his property in 1964, and Bemis's in 1982, concern arose about certain activities on Little Good Harbor beach. At that time, the beach owners asserted that they were allowing other members of the Brier Neck Association, a community association, to use the beach under "permissive license," and they established rules for the use of the beach by other members of the association. In approximately 1980, after further concerns regarding unauthorized beach use, a locked gate was placed at the top of the Way, and keys to the gate were issued by the association. On or about January 1, 1992, as a result of a dispute between the defendant Knott and other members of the association, Knott locked the gate at the top of the Way, preventing passage by others. This action prompted this law suit.

In his decision, the judge indicated that the case required a "determin[ation of] the intent of the parties in referring to a plan." The judge concluded that intent as to the purpose of the Way could be "derived from the record instruments and undisputed facts." The judge then decided that "the intent inferable in this case is that the lots shown on the [p]lan (but not other areas) should enjoy rights of access by foot over the [Way]." The judge also uses language in his decision which speaks in terms of estoppel, suggesting that an easement by estoppel may exist as to the Way. The judge further indicates that he was "strengthened in [his] conclusion" that an easement exists "by the reservation in the initial deed out of Lot 17," namely Document 2491, referred to in Bemis's certificate. We conclude that the record establishes, as matter of law, that no easement in the plaintiffs' favor has been created expressly or otherwise.

1. We first inquire whether an express easement exists as a result of the references on the defendants' certificates of title to the Way and to plans showing the Way. The plaintiffs argue that "by means of the plans that . . . are incorporated by reference into the [defendants'] certificates of title, as well as [those] references in the certificates to an 'unnamed

private way,' the certificates of the [d]efendants meet the general specificity requirements for references to encumbrances" which can be impressed on registered land. We reject the argument.

General Laws c. 185, § 46 (1992 ed.), states that holders of a certificate of title take "free from all encumbrances except those noted on the certificate," and G. L. c. 185, § 47 (1992 ed.), expressly provides that, when land is registered, the decree of registration (and subsequent certificate) "shall set forth . . . all particular . . . easements . . . to which the land or the owner's estate is subject." In both the Bemis and Knott certificates, the plans are referred to principally to provide a description of the boundaries of the properties, and the Way itself is only generally referenced as marking a boundary. These references are insufficient to create an express easement. Further, with respect to Bemis's property, the reference in his certificate to the reservations in Document 2491 does not establish an easement because the words of the reservations disclose no right to use the Way reserved generally for the benefit of all the owners of lots in the subdivision, nor one reserved specifically for the benefit of the lots not owned by the plaintiffs. Also, with respect to Knott's property, the reference in his certificate to the reservations in Document 6143 does not establish an easement because the words of those reservations pertain exclusively to Salt Island Road. We conclude that this aspect of the plaintiffs' claim fails under the well-established rule that "[i]n order to affect registered land as the servient estate, an easement must appear on the certificate of title. See *Goldstein* v. *Beal*, 317 Mass. 750, 757 (1945); *Dubinsky* v. *Cama*, 261 Mass. 47, 56-57 (1927)." *Tetrault* v. *Bruscoe*, 398 Mass. 454, 461 (1986).[4]

2. We next examine whether the plaintiffs have proved the existence of an easement under either one of two recognized

---

[4]*Myers* v. *Salin*, 13 Mass. App. Ct. 127 (1982), relied on by the plaintiffs, is within this general rule. In *Myers*, the certificate of title at issue made reference to easements and rights of way, and those encumbrances were contained in deeds that were referred to in the certificate. *Id.* at 136-137.

exceptions to the rule stated above. If an easement is not expressly described on a certificate of title, an owner, in limited situations, might take his property subject to an easement at the time of purchase: (1) if there were facts described on his certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) if the purchaser has actual knowledge of a prior unregistered interest. See, as to the latter, *Wild* v. *Constantini*, 415 Mass. 663 (1993); *Killam* v. *March*, 316 Mass. 646 (1944); *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142 (1982).

In considering the first exception, we ask whether there were facts within the Land Court registration system available to Bemis or Knott, at the time of their purchases, which would lead them to discover that either property was subject to an encumbrance, even if that encumbrance was not listed on their certificates of title. Bemis and Knott were obligated to review only documentation within the registration system because to require a purchaser to investigate facts not documented within that system would be directly contrary to the purposes of the Land Registration Act. *Kozdras* v. *Land/ Vest Properties, Inc.*, 382 Mass. 34, 43-45 (1980). The purchaser need not look beyond the decree, for all facts prior to the decree, including the petition for registration itself, are irrelevant. See *Butler* v. *Haley Greystone Corp.*, 347 Mass. 478, 484-485 (1964).

If a plan is referred to in the certificate of title, the purchaser would be expected to review that plan. "A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed." *Labounty* v. *Vickers*, 352 Mass. 337, 344 (1967). See *Dubinsky* v. *Cama, supra* at 53. However, it is important to remember that "reference to a plan like [the plans in this case], laying out a large tract, does not give every purchaser of a lot a right of way over every street laid down upon it." *Pearson* v. *Allen*, 151 Mass. 79, 81 (1890). See *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. 725, 728 (1971); *Patel* v. *Plan-*

*ning Bd. of Andover*, 27 Mass. App. Ct. 477, 482 (1989). Further, "[i]t is well established that 'where land is conveyed with reference to a plan, an easement . . . is created only if clearly so intended by the parties to the deed.' " *Scagel* v. *Jones*, 355 Mass. 208, 211 (1969), quoting *Rahilly* v. *Addison*, 350 Mass. 660, 662 (1966). See *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350, 354 (1926), quoting *Prentiss* v. *Gloucester*, 236 Mass. 36, 52 (1920) ("a reference to a plan in a deed, although accompanied by its use for description or bounds, does not result in the conveyance of rights not necessary for the enjoyment of the premises, in the absence of an intent appearing to that effect").

Bemis and Knott both knew, from the descriptions in their certificates, that their lots abutted the Way. It would be reasonable to expect them to review the plan referred to in their certificates which shows the Way between the two lots. Because the Way is shown on the plan, Bemis and Knott would also be expected to examine the certificates of other lot owners in the subdivision to determine whether others might have an interest in the Way. *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 136-137 (1982).

A review of the plaintiffs' certificates of title would disclose to Bemis and Knott no right to use the Way on any certificate. Appurtenant to each of the plaintiffs' lots is a precisely described right to use only those private ways necessary for access to that specific lot. Further, as the facts disclose, the record is devoid of any indication in other certificates of title, and in deeds, of any rights in the Way. On the contrary, all the documents consistently express rights *only* in private ways considered essential for access to the lot being conveyed.[5] (The only exception is lot 98, which, as has been previously noted in the facts, contains an ex-

---

[5]The reservation in Document 2491 over Bemis's portion of the Way would not by itself create a right for the benefit of the plaintiffs to use the Way because the plaintiffs were strangers to that document. See *Hodgkins* v. *Bianchini*, 323 Mass. 169, 172 (1948); *Patel* v. *Planning Bd. of Andover*, 27 Mass. App. Ct. 477, 482 (1989).

pressly described ten-foot right of passage which was never laid out.)

Thus, the plaintiffs received only a limited right of way to use the streets and ways specifically identified in their certificates for access. *Joyce* v. *Devaney*, 322 Mass. 544, 548-549 (1948). The factual documents within the registration system disclosed nothing to indicate to Bemis or Knott that the plaintiffs had a right to use the Way. We conclude that the plaintiffs have failed to meet the requirements of the first exception described above, and that any reliance placed by the plaintiffs on the "intent of the parties" is misplaced.

In considering the second exception, we ask whether at the time of purchase either Bemis or Knott had actual knowledge of a prior unregistered interest. See *Wild* v. *Constantini, supra*; *Killam* v. *March, supra*; *Feldman* v. *Souza, supra*. If Bemis or Knott acquired title with actual knowledge of a prior unregistered interest, they have not satisfied the requirement of good faith set forth in G. L. c. 185, § 46, under the so-called *Killam* rule.[6]

In this case, it is not shown that either Bemis or Knott had any actual knowledge of a prior unregistered document creating an easement in the Way between any of the plaintiffs and the predecessors in title of Bemis or Knott. The record

---

[6]General Laws c. 185, § 46 (1992 ed.), provides that a subsequent purchaser of registered land who acquires his land "for value and in good faith shall hold the same free from all encumbrances except those noted on the certificate" and certain enumerated encumbrances, if existing. In *Killam* v. *March*, 316 Mass. 646 (1944), we held, under the "good faith" requirement in § 46, that a purchaser of previously registered land took subject to an unregistered lease for more than seven years of which he had actual notice, although it was not noted on his certificate of title. In *Wild* v. *Constantini*, 415 Mass. 663 (1993), we held that a purchaser of previously registered land was bound by actual knowledge of a right of way which was not expressly referred to in the relevant certificates of title. In *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142 (1982), the Appeals Court applied the *Killam* rule to affirm a judgment of the Land Court which concluded that purchasers of registered land took subject to an easement of which they had actual notice.

discloses only that Bemis and Knott have been aware of the use of the Way as a path to the beach as a permissive use.[7]

3. We view the result as consistent with the language of G. L. c. 185, §§ 46, 47, and 53, and the goals of the land registration system. See *Kozdras* v. *Land/Vest Properties, Inc., supra.*

4. The judgment is vacated. A new judgment is to enter declaring that the lots owned by the respective plaintiffs on Land Court plan 805S, as those lots are described in the complaint, do not benefit from an easement for passage in common with others over the area between lots 16 and 17, as shown on said plan.

*So ordered.*

---

[7]It is also contended that the defendants are estopped to deny the existence of an easement based on the notice provided by the existence of the Way on the plan. However, we have never applied to registered land an estoppel theory not based on actual notice. The judge stated that *Goldstein* v. *Beal*, 317 Mass. 750 (1945), supports the possibility of the creation of an easement by estoppel on registered land based on a plan. This is not so. The principal focus in *Goldstein, supra* at 755, is on "the intention of the parties," a factor which does not concern estoppel. *Goldstein* explicitly disclaims an estoppel theory. See *id.* at 755-756 (estoppel "is not applicable").