NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1232                                      Appeals Court

JOHN R. LOISELLE, trustee,[1] & others[2]  vs.  BRIAN S. HICKEY & others.[3]

---

[1] Of the Loiselle Family Realty Trust.

[2] Jane W. Loiselle, as trustee of the Loiselle Family Realty Trust; Stephen Campe; Karen Campe; Francis Carrick; Jeanne Carrick; Philip J. Ciaramicoli; Gayle A. Ciaramicoli; Donald F. Daley, as trustee of the Donald F. Daley Revocable Living Trust; Thomas Daley; Ursula Daley; Stephen Delvecchio; Marcia Delvecchio; Virginia L. Devine, as trustee of the Hippogriffe Road Realty Trust; Joseph A. Donato; Diane Donato; Pamela J. Driscoll; Robert A Furman and Carole R. Bohn, as trustees of the Bohn-Furman Realty Trust; Richard A. Giberti; Elaine M. Giberti; John Gray; Sarah Gray; John A. Hennessey; Susan M. Hennessey; John F. Howard; Judith S. Howard; Martin J. Jessel; Karen LaFauci; Lisa M. Swalec, as trustee of the Leroux Family Trust; Joseph A. Lima and Sue E. Lima, as trustees of the Patriots Way Realty Trust; LoVerme Bayview Limited Partnership; James G. Maguire, as personal representative of the estate of Mary H. Maguire; Paul Maher; Pamela Maher; Linley Mahon, as personal representative of the estate of Geoffrey L. Mahon; Arthur Maressa; Maria Marinescu; Sorin Marinescu; Gary McWilliams; James T. Moshier; Thomas M. O'Hear; Kelly O'Rourke; Richard L. O'Shea; John Palermo; Kara Palermo; Kenneth Pecore; Mark S. Pelletier; Patricia M. Pelletier; Lewis Piantedosi; Robert M. Pierce; Joseph J. Rahal; Mary G. Rahal; Russel A. Robbins; Diane M. Robbins; Joseph G. Russo; WT Dennis LLC; Christopher P. Tosti, as trustee of the BPR Irrevocable Trust, sole beneficiary of the Tosti Realty Trust; Christopher P. Tosti; Christine Tosti; Andrew Tvirbutas; Catherine Tvirbutas; John J. Walker; Susan L. Walker; Michelle T. Walker; Kristin M. Walker; Elizabeth A. Walker; and Roland W. Young.

[3] Mary P. Hickey; Lorraine M. Paglia and Robert L. Paglia, as trustees of the Hay Dennis Realty Trust; Patricia E. Howard and Jean Howard, as trustees of the Bayview Realty Trust; Shore

No. 17-P-1232.

Suffolk.      May 3, 2018. - July 27, 2018.

Present:  Milkey, Hanlon, & Singh, JJ.


Beach.  Easement.  Real Property, Registered land:  easement,
     Beach.


     Civil action commenced in the Land Court Department on June 17, 2016.

     The case was heard by Alexander H. Sands, III, J., on motions for summary judgment.


     Justin Perrotta for John R. Loiselle & others.
     Roland W. Young, pro se.
     Sarah A. Turano-Flores for James J. Lepore & others.
     Brian M. Hurley (Jeffrey B. Loeb also present) for Brian S.
Hickey & others.


     MILKEY, J.  This is a dispute between inland and shoreland

owners over rights to use a particular beach in Dennis.  The

sixty-nine plaintiffs (inland owners) claim the right to use the

---

Drive LLC; Barbara G. Wells and Robert Emerson Wells, Jr., as
trustees of the Wells Nominee Trust; Mary E. Howe; Robert W.
Howe, Jr.; Peter A. Schimmel; Michael Andreottola; Susan
Andreottola; Dennis Conservation Trust; Paul W. Eysie; Paul V.
Galvani; Linda A. Galvani; Charlene E. Keady; Joseph A.
Salamone; William A. Sampson; Martha M. Sampson; Peter R.
Daniels, as trustee of the Daniels Nominee Trust; Jane Daryl
Springer, as trustee of the Jane Daryl Springer Residence Trust;
Mark C. Thurman; Wendy C. Thurman; N. Richard Greenfield; Karen
L. Greenfield; Douglas Suliman; Patricia Suliman; James J.
Lepore; Carton R. Copp; Alice A. Copp; and Happiness Association
LLC.

intertidal beach area that lies seaward of lots owned by the thirty-four defendants (shoreland owners). All of the lots are registered land that originally was part of a 217-acre tract adjacent to Cape Cod Bay that was subdivided over the course of the last century. On motions for summary judgment, a Land Court judge ruled in the shoreland owners' favor, concluding that they owned the contested portions of the beach (disputed flats), and that the inland owners' rights to use the disputed flats were limited to those public rights reserved by the Colonial Ordinance of 1641-1647. See Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. 251, 253 (1961) (although land in intertidal zone generally is privately held, it is subject to certain reserved public rights, typically summarized as fishing, fowling, and navigation). The judge explained his ruling in a thoughtful and comprehensive forty-page decision. We affirm the judgment, while clarifying one ambiguity in it.

Background. As an initial matter, we note that the current case is a follow-up to Hickey v. Pathways Assn., Inc., 472 Mass. 735 (2015) (Hickey I). That case was a dispute over Hickey Way, a twenty-foot wide right-of-way that runs from Shore Drive to Cape Cod Bay in Dennis. Id. at 736. The four shoreland owners who owned the lots abutting Hickey Way brought that case seeking to establish that they held the fee interest in Hickey Way and that the inland owners had no right to use it. Id. at 737. The

Supreme Judicial Court ruled in favor of the inland owners.

Specifically, the court held that the original developers had

retained the fee to Hickey Way and had granted the inland owners

rights to use that way.  Id. at 753, 761.

Fresh from their victory securing their rights to use

Hickey Way, the inland owners brought the current case seeking

to establish their right to use the disputed flats for all

normal beach purposes (not just for the reserved public rights

of fishing, fowling, and navigation).  As the judge aptly put

it, "having been adjudged to hold rights in . . . Hickey Way,

[the inland owners] now seek a ruling as to the scope of their

rights in the area accessed by that way."

We turn next to a summary of the undisputed subsidiary

facts.  The original 217-acre tract was registered in 1903 to

Frank B. Tobey.  It subsequently was developed in stages, as

depicted in various Land Court plans.[4]  The eastern portion of

the Tobey tract -- depicted on the so-called "B plan"[5] -- was

---

[4] We direct the reader's attention to the composite plan set forth as an appendix to Hickey I, 472 Mass. at 766.

[5] The Tobey tract was registered in Land Court case no. 647, with the original decree plan no. 647-A.  Subsequent developments of the Tobey tract were reflected in plans numbered 647-B, 647-C, etc.  Consistent with Land Court practice, we refer to those plans, respectively, as the "B plan," "C plan," and so on.  Furthermore, we refer to the lots depicted on those plans with reference to the letter number of the plan and the number of the lot assigned to it on that plan.  For example, lot E on plan no. 647-B is referred to as lot B-E.

developed first.  Although the current litigation does not directly involve any of the B plan lots, the development of that area serves as a useful point of comparison.  Along the water in that area was a long but narrow upland beach that was set aside as a separate lot (beach lot B-E).  The B plan lots were developed so that there would be access ways that ran to beach lot B-E from a road that paralleled the water (with the access ways spaced every few lots).  The deeds to the fourteen lots shown on the B plan that lie just to the south of beach lot B-E describe their northern boundary variously as "by the beach," by specific reference to beach lot B-E, or both.

The current litigation involves the western portion of the Tobey tract.  As the court observed in Hickey I, 472 Mass. at 740, this area was laid out "in a similar fashion to the earlier subdivision on the B [p]lan."  Thus, access ways ran to Cape Cod Bay from the road that paralleled the water (again, with the ways spaced every few lots).  However, unlike the eastern portion, there was not a separately reserved upland beach lot to which the access ways led.[6]  Nor did the deeds or certificates of title to the shoreland lots in the western portion describe the

---

[6] There was a reserved upland beach lot (depicted as beach lot E-K) at the far western end of the development, which was deeded to the town in 1937.

northern boundary of those lots as "by the beach."  Instead, each shoreland lot was described as being bounded "by the waters of Cape Cod Bay" (or similar language).

After the shoreland area of the western portion was subdivided, the inland lots in that area were developed. Although most of the deeds or certificates of title for the lots held by the inland owners reference rights in Hickey Way or the other reserved ways, none of them references any reserved beach rights.  As discussed further below, there are two owners of inland lots who are not parties to this case whose deeds do reference beach rights.

Discussion.[7]  As the court did in Hickey I, we begin by examining whether the shoreland owners hold title to the disputed flats, and then proceed to examine what easement rights, if any, the inland owners were granted in that land.

1.  Ownership of the disputed flats.  "The Colonial Ordinance of 1641-1647 established that a person holding land adjacent to the sea shall hold title to the land out to the low water mark or 100 rods (1,650 feet), whichever is less."  Pazolt

---

[7] "We review the grant of summary judgment . . . de novo to decide whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Calvao v. Raspallo, 92 Mass. App. Ct. 350, 351-352 (2017) (quotation omitted).  Here, the material facts are not in dispute.

v. Director of Div. of Marine Fisheries, 417 Mass. 565, 570 (1994), citing Boston Waterfront Dev. Corp. v. Commonwealth, 378 Mass. 629, 635 (1979). Although title to the upland portion of shoreland property can be severed from the title to the flats, this generally must be done expressly, that is, through the use of "excluding words." Id. at 570-571, quoting from Commonwealth v. Roxbury, 9 Gray 451, 524 (1857). Otherwise, the owners of shoreland property are presumed to own the fee in the adjacent flats. As explained below, we agree with the judge that the inland owners have not overcome the presumption that the disputed flats are owned by the shoreland owners, whose predecessors in title acquired title to them from the original developers.

As noted, the shoreland owners' deeds and certificates of title describe their lots as bounded "by the waters of Cape Cod Bay," or equivalent language. Under the cases, such language is interpreted as conveying property to the low water mark. See Michaelson, 342 Mass. at 260-261 ("[W]ords in a deed such as 'Westerly by Wild Harbor,' or words of similar import, convey title to the low water mark"); Brown v. Kalicki, 90 Mass. App. Ct. 534, 535, 538 (2016) (language that land was bounded by "Nantucket Sound" gave title to low water mark, including with respect to any accretions). In addition, most of these deeds or certificates of title note that the property is being held

subject to the public rights reserved by the Colonial Ordinance. Such references would make no sense if the land being conveyed were bounded by the mean high tide mark, with the fee to the intertidal area reserved to others. Thus, far from providing evidence helpful to the inland owners, the deeds and certificates of title to the shoreland lots support the shoreland owners' claim that they own title down to the mean low water mark.

In trying to argue that that the fee in the disputed flats nevertheless was reserved by the original developers, the inland owners seek support in the rulings that the Supreme Judicial Court made in Hickey I with respect to the fee in Hickey Way. This analogy does not aid them. In Hickey I, the court relied, in great part, on the fact that the deed and certificates of title to the relevant shoreland lots referenced Hickey Way as the side boundary to those lots and also gave the shoreland owners themselves the right to use Hickey Way for access (something that would have been unnecessary if the original developers had intended to convey title to Hickey Way). Hickey I, 472 Mass. at 748. In the case before us, the inland owners cannot raise any similar textual arguments based on the language in the deeds or certificates of title to the shoreland lots.

Similarly, any comparisons to the development of the eastern portion of the Tobey tract also do not aid the inland

owners' case.  While there are some broad similarities as to how the two portions of the Tobey tract were developed, there are also some important distinctions.  Most significantly, as noted, there was an upland beach in the eastern portion that the original developers carved out as a separate lot, with the lots immediately to the south of the beach lot denoted as being bounded by that beach.  With respect to the western portion, the inland owners cannot point to any evidence in the deeds or certificates of title to the lots owned by the litigants -- or in the plans that document the progression of the development of the western portion -- that evince that the original developers intended to carve out a beach lot comparable to the one on the eastern side.[8]  See Labounty v. Vickers, 352 Mass. 337, 349 (1967) ("A person examining [the relevant] plan could reasonably discern that [an access] easement [to the water] had been reserved[,] . . . [b]ut there is nothing on the plan to show that the beach area [on either side] of the strip was similarly reserved").  Comparisons to the development of the eastern

---

[8] In fact, at least at the current time, there does not appear to be any upland beach shoreward of the steep coastal bank that parallels the water on the western portion.  As a result, the "beach" in dispute lies entirely in the intertidal area.

portion of the Tobey tract therefore hurt, rather than help, the inland owners' case.[9]

The only robust evidence that the inland owners have identified in support of their claim that the original developers might have intended to retain the fee in the disputed flats for use as a communal beach comes from the deeds to two inland lots (lots H-A2 and H-A3), whose owners are not parties to this litigation. Specifically, the deeds to those two lots -- which were the first granted by the original developers for inland lots in the western portion of the Tobey tract -- purported to convey the right to use a beach owned by the developers, referenced in one of the deeds as "the beach reserved by the grantors for use of the lot owners in this development." However, which beach was being referenced in those deeds is not at all clear. Given the lack of any other indication that the original developers at that point still owned a separate beach lot carved out on the western portion of the Tobey tract, the judge concluded that the unidentified beach

---

[9] There was, for a brief period, a small private upland beach lot that the original developers had reserved at the far western edge of the western portion of the tract (deeded to the town in 1937). See note 6, supra. If anything, the developers having carved out that beach lot further undercuts the inland owners' argument that they implicitly retained the fee to the disputed flats (which lie just to the east of the reserved upland beach lot).

referenced in the two deeds was likely beach lot B-E (the long, private demarcated upland beach created on the eastern portion of the tract).[10]  In any event, whatever beach rights were conveyed to the owners of lots H-A2 and H-A3 (an issue not resolved by the current litigation), we agree with the judge that the two deeds in question are not enough to overcome the presumption that the shoreland owners acquired the fee in the disputed flats.  We turn next to the inland owners' claim that they nevertheless hold an easement to use the disputed flats for general beach purposes.

2.  Alleged easements in the disputed flats.  It is undisputed that the certificates of title to the shoreland lots (which include the disputed flats) make no reference to beach rights held by others (other than to those public rights reserved by the Colonial Ordinance).  That fact alone presumptively negates the inland owners' claim that they own such rights.  See Hickey I, 472 Mass. at 754 ("[F]or registered land to be burdened by an easement, generally the easement must be shown on the certificate of title").  However, "there are two

---

[10] As noted, an upland beach lot had been set aside on the western portion of the tract, but that lot already had been transferred to the town in 1937, three years before the first two inland lots had been deeded out.  See note 6, supra.  As of 1940, the original owners also had sold most, but not all, of the shoreland lots.

exceptions to th[is] general rule." Id. at 755, citing Jackson v. Knott, 418 Mass. 704, 711 (1994). The inland owners argue that the first exception recognized by Jackson applies.[11]

Under the first Jackson exception, even where the certificate of title does not show an easement, courts nevertheless can find registered land impressed with an easement if a review of the certificate revealed facts "which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system" that memorialized such an easement. Hickey I, at 755-756, citing Jackson, 418 Mass. at 711. However, even if we assumed arguendo that a reasonable purchaser of the shoreland lots somehow was put on notice that he or she should investigate further whether other documents in the registration system reflected an intent to reserve beach rights easements in the disputed flats, a review of those documents would not actually reflect such an intent.[12] As noted, while many of the deeds or

---

[11] "The second Jackson exception applies where the owner takes possession of registered land with actual knowledge that an encumbrance exists." Hickey I, 472 Mass. at 756 n.28, citing Jackson, 418 Mass. at 711. The inland owners make no claim that this exception applies.

[12] We pass over the question of whether, even had the original owners intended to grant the inland owners an easement in the disputed flats, the original developers reserved the right to grant such easements.

certificates of title to the inland owners' lots reference rights to use Hickey Way and the other access ways, none references a right to use the disputed flats. Compare Anderson v. DeVries, 326 Mass. 127, 129, 134 (1950), overruled on other grounds by M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87 (2004) (inland owners held to have beach rights where certificates of title of both inland and shore properties referenced access easement "to the beach" and where "[t]he chief inducement for the purchase of [the inland parcels] was the right to use the beach for swimming, bathing, and sun bathing"); Houghton v. Johnson, 71 Mass. App. Ct. 825, 834-835 (2008) (even as to nonregistered land, reservation of recorded right of way "leading to the beach," without more, held insufficient to support implied easement to use privately held beach outside of right of way).

Once again, the inland owners seek to invoke the deeds to lots H-A2 and H-A3 to support their claim that they have beach rights in the disputed flats even though the certificates of title to the shoreland lots make no reference to such rights. As already noted, however, it is far from clear that the particular beach referenced in those deeds is the one comprised of the disputed flats. In any event, as the judge aptly observed, "[e]ven if the inference could be made that [the H-A2 and H-A3 deeds] referred to the [d]isputed [f]lats, there is

nothing in the record indicating that [the inland owners'] lots were intended to be benefitted by these conveyances, which represent outliers among the thousands of deeds to hundreds of lots within the Tobey [t]ract."[13]

The inland owners are left to argue that their easements to use Hickey Way and the other access ways to reach the intertidal area necessarily indicate the original developers' intent that the inland owners be able to use the entire intertidal beach area for general beach purposes.  It makes no sense, they argue, for the original developers to have created a system of access ways for the benefit of the inland owners unless such owners thereby acquired significantly greater rights than the public at large.  They maintain that because members of the general public can access a public beach down the road, and additionally have the right to undertake fishing, fowling, and navigation in privately held intertidal areas, then it must follow that the original developers intended the inland owners to be able to spread out onto the entire beach area and use it for all normal beach purposes.

---

[13] The judge was careful to note that he was making "no ruling as to whether the owners of [l]ots H-A2 and/or H-A3 (who are not parties to this case) have any rights in the [d]isputed [f]lats, nor as to the scope of those rights, if any."

We are unpersuaded.  Through the easements they hold in Hickey Way and the other access ways, the inland owners enjoy significant rights not possessed by the general public.  For example, the inland owners can use the access ways closer to their homes and not have to walk down to the public ways to access Cape Cod Bay and the disputed flats.  In addition, as we note infra, there is nothing in the undisputed facts to indicate that the inland owners necessarily would be limited to fishing, fowling, and navigation within those portions of the intertidal area that lie within the corridors of the access ways themselves.  Simply put, holding that the inland owners never obtained rights to use the disputed flats for general beach purposes does not render their rights in the access ways so "worthless" that we must draw a contrary conclusion.  In sum, we agree with the judge's conclusion that the first Jackson exception does not apply, and that there is no other basis for inferring the existence of easements that do not appear on the certificates of title to the shoreland lots.

3.  Ambiguity in the judgment.  We are not quite done, because it is appropriate that we address a facial ambiguity in the judgment, lest our affirmance of it be misunderstood.[14]

---

[14] We raised this issue sua sponte in an order issued prior to oral argument.

Before turning to that language, we briefly review the overall scope of the current litigation.

The case before us has always been about whether the inland owners could use the disputed flats for general beach purposes, and not just for fishing, fowling, and navigation. The portions of the intertidal beach that lie within the access ways themselves are not part of the disputed flats, because title to them is not held by the shoreland owners but instead by the unidentified heirs of the original developers (who, like the shoreland owners, presumably hold title down to the low water mark). See Hickey I, 472 Mass. at 753.[15] Accordingly, the extent of the inland owners' rights to use the access ways was implicated in the current litigation only to the extent that it bore on any rights they claimed in the disputed flats. The extent of their rights to use the beach area lying within the boundaries of the access ways was not at issue in this case.[16]

---

[15] Strictly speaking, Hickey I addressed only Hickey Way, not the other two private access ways at issue, but the court's reasoning would appear to apply equally to all of the ways in question.

[16] In yet another Land Court action -- which has been stayed pending the outcome of the current appeal -- two of the shoreland owners are seeking to litigate the scope of the inland owners' rights to use Hickey Way, the largest of the three access ways. Hickey vs. Pathways Association, Inc., Land Court No. 16 MISC 000123. Those same owners also brought a Superior Court action challenging the inland owners' efforts to construct a walkway over Hickey Way. We today have separately resolved their appeal of the dismissal of that action for lack of

The judge's well-crafted memorandum of decision is fully consistent with the scope of the litigation.  Despite the length of that memorandum, there is nothing therein to suggest that the judge was adjudicating the extent of the inland owners' rights to use the access ways themselves.  With one potential exception, the terms of the judgment he entered are also consistent with this scope.  Thus, the judgment recites that it adjudged "that [the shoreland owners] own the portions of the [d]isputed [f]lats adjacent to their respective properties, and . . . that [the inland owners] have no rights in the [d]isputed [f]lats other than their Colonial Ordinance Rights."  The potential exception involves a provision in the judgment that "ORDERED and ADJUDGED that [the inland owners'] rights in the [referenced access] ways are limited to the use thereof to access the [d]isputed [f]lats solely for the purpose of exercising their Colonial Ordinance Rights" (footnote omitted). Read literally, this phrasing could be taken as saying that the inland owners have no rights to use the access ways themselves for any purpose other than those reserved by the Colonial Ordinance (that is, fishing, fowling, and navigation).  We reject this interpretation, which would resolve issues outside the scope of this litigation and would be unsupported by -- and

---

standing.  See Hickey v. Conservation Commn. of Dennis, 93 Mass. App. Ct.       (2018).

indeed inconsistent with -- the judge's memorandum of decision.[17] Instead, we interpret the provision as meaning -- as we believe the judge intended -- that while the access ways provide the inland owners the right to gain access to the disputed flats, they may gain such access only to exercise the rights reserved by the Colonial Ordinance.  We leave to another day resolution of the scope of the inland owners' rights to use the access ways themselves.

<u>Judgment affirmed</u>.

---

[17] We note, for example, that even though the Colonial Ordinance did not reserve for the public a right to cross privately held flats to bathe in the sea, see <u>Butler</u> v. <u>Attorney Gen</u>., 195 Mass. 79, 83 (1907), the inland owners here may well have the right to use the access ways here to do so (as the attorney for one of the main group of shoreland owners acknowledged at oral argument).  Cf. <u>Anderson</u>, 326 Mass. at 133 (rights in pedestrian access way did not terminate at high water mark but necessarily included rights to access water for bathing and swimming).