NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-234

PARKRIDGE REALTY, INC.

vs.

DESTON COMPANY, LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this appeal, Parkridge Realty, Inc., challenges the validity of Deston Company, LLC's sewer easement over Parkridge's abutting lot within an industrial park in Haverhill. The parties' lots are on registered land.  Twenty-three years after Deston installed a sewer line across a corner of Parkridge's lot, Parkridge claimed that Deston did not have a valid sewer easement because it does not appear on Parkridge's certificate of title.  The sewer easement clearly appears, however, on the subdivision plan referred to in Parkridge's title certificate.  Acting on cross motions for summary judgment, a Land Court judge declared that Deston had a valid sewer easement, reasoning that the documents in the registration system had placed Parkridge on notice of the easement when it

purchased its lot.  For essentially the same reasons set forth in the motion judge's well-reasoned decision, we affirm.

Background.  We draw the following undisputed facts from the summary judgment record.  See Conway v. Caragliano, 102 Mass. App. Ct. 773, 774 (2023).

The land on which the industrial park now rests was first registered by Avco Corporation in 1967 and depicted on the A Plan.  Avco Corporation conveyed the land to the Avco Everett Research Laboratory, Inc., in 1973.  The C Plan, registered in 1984, divided the parcel into Lots 2 and 3 and introduced a twenty-five foot wide sewer easement running along the edge of the property, which the parties and the Land Court judge referred to as the "municipal sewer easement."  The D Plan, registered in early 1987, further divided Lot 2 into Lots 4, 5, and 6; it shows the same municipal sewer easement running through Lot 5.  Later that year, Lots 5 and 6 were conveyed to John C. Tuttle, Jr., as trustee of M.V.I. Realty Trust (M.V.I. trust). The memorandum of encumbrances attached to M.V.I. trust's 1987 certificate of title for Lots 5 and 6 listed several documents of significance, which we discuss later.

M.V.I. trust further subdivided Lots 5 and 6 into Lots 7 through 14 as shown on the E Plan, which was filed in the registration case in connection with M.V.I. trust's certificate of title (no. 56949) in August 1987.  Pertinent to this case,

2

the E Plan shows an additional sewer easement, referred to by the parties and the motion judge as the "1987 easement," across a corner of Lot 8, which would enable Lot 7 to connect to the existing municipal sewer easement (and serve no other apparent purpose). In 1992, Essex Holdings, Inc., took ownership of Lots 7 through 11 as shown on the E Plan. In 1995, Essex Holdings sold Lot 7 to D & S Realty Trust, which conveyed the lot to Deston in July 1996. Essex Holdings sold Lot 8 to Parkridge in August 1996. By the spring of 1997 Deston had installed a sewer line across Lot 8, within the 1987 easement as depicted in the E Plan, and connected it to the municipal sewer line.

In 2020 -- we need not address the reasons for the twenty-three year delay -- Parkridge filed a try title complaint in the Land Court, also alleging trespass by Deston and seeking declaratory and injunctive relief. The Land Court denied relief to Parkridge and declared that Deston's Lot 7 benefited from a sewer easement across Parkridge's Lot 8: the 1987 easement, as shown on the E Plan. Parkridge appeals.

Discussion. "We review a decision on a motion for summary judgment de novo" (citation omitted). Smiley First, LLC v. Department of Transp., 492 Mass. 103, 107 (2023). Where, as here, the parties filed cross motions for summary judgment, we view the evidence in the light most favorable to the party whose motion was denied. See id. at 108; Boazova v. Safety Ins. Co.,

3

462 Mass. 346, 350 (2012). "The allowance of a motion for summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law" (quotation and citation omitted). Smiley First, LLC, supra.

Generally, "to affect registered land as the servient estate, an easement must appear on the certificate of title." Tetrault v. Bruscoe, 398 Mass. 454, 461 (1986). See G. L. c. 185, § 46; Hickey v. Pathways Ass'n, Inc., 472 Mass. 735, 754 (2015). There are two "recognized exceptions" to this rule. Jackson v. Knott, 418 Mass. 704, 710-711 (1994). Under the first Jackson exception, a purchaser of registered land may take the property subject to an encumbrance not included in the certificate of title if the certificate describes facts "which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system," and if the information discovered upon further investigation suggests the intent to convey an easement. Id. at 711.[1] See Hickey, supra at 759 ("Purchasers are expected to

_____

[1] Under the second Jackson exception, a purchaser with actual knowledge of an encumbrance takes subject to that encumbrance notwithstanding its absence from the certificate of title. See Jackson, 418 Mass. at 711. Deston also argued that the second exception applied, but the judge concluded that disputes of fact foreclosed deciding in a summary judgment motion whether the second Jackson exception applied. Deston does not advance its actual knowledge claim on appeal.

4

review the plan showing the lot in question, and to investigate further other certificates of title, documents, and plans contained within the registration system, at the time of their purchase, to determine both their own rights and whether others have rights").

Parkridge's certificate of title to Lot 8 does not list the 1987 easement -- or the municipal sewer easement, the validity of which Parkridge recognizes -- as an encumbrance.  It does, however, refer to the 1987 E Plan.  "If a plan is referred to in the certificate of title, the purchaser would be expected to review that plan."  Jackson, 418 Mass. at 711.  "A plan referred to in a deed becomes a part of the contract so far as may be necessary . . . to determine the rights intended to be conveyed."  Id. at 712, quoting Labounty v. Vickers, 352 Mass. 337, 344-345 (1967).

Parkridge, therefore, would have been expected to review the E Plan when it purchased Lot 8, and even a cursory review of the plan would have shown the 1987 easement that would allow Lot 7 to connect to the municipal sewer line.  Further investigation of other certificates of title and documents in the registration system at the time Parkridge took title, which Parkridge would have been expected to review, would provide further evidence of the 1987 easement, as we now discuss.

5

Parkridge acquired Lot 8 from Essex Holdings, "subject to all easements and restrictions of record." Parkridge holds title under a certificate no. 67100, which is a transfer certificate from no. 62741, under which Essex Holdings held title to Lots 7 through 11. These certificates both refer to the E Plan. Essex Holdings's certificate was in turn a transfer certificate from M.V.I. trust's certificate no. 56949, which refers to the D Plan. The certificates in Parkridge's chain of title clearly show the development of a series of sewer and drain easements to provide Lots 7 through 14, as shown on the E Plan, access to municipal services, including sewer easements.

Moreover, the memorandum of encumbrances attached to M.V.I. trust's certificate of title lists several documents, all included in the registration system, which would have further confirmed the developers' intent to create, and the existence of, what ultimately became Deston's sewer easement. As the Land Court judge explained in detail, these encumbrances included a covenant between Tuttle and the Haverhill Planning Board (board) and a subsequent agreement among Tuttle, as trustee of M.V.I. trust, the board, and a bank. These documents show that lots 7 through 14 on the E Plan were created as part of a definitive subdivision plan for the "Merrimack Valley Industrial Park," which Tuttle had submitted to the board for its approval. As part of that process, Tuttle and M.V.I. trust entered into the

6

covenant, superseded by the agreement, to ensure the board that they would construct ways and install municipal services, as required by the board's rules and regulations, to serve the buildings to be constructed on the lots in the proposed subdivision. We agree with the judge that these, and other documents listed on the memorandum of encumbrances,[2] "provide[] abundant detail about M.V.I. Trust's purposes in creating the 1987 Easement."

Parkridge contends that, notwithstanding the appearance of the 1987 easement on the E Plan, no valid conveyance of easement rights exists because M.V.I. trust's covenant and agreement with the board were merely executory writings with conditions subsequent that may or may not have been satisfied. See Akasu v. Power, 325 Mass. 497, 501 (1950) ("An easement may be granted which will terminate . . . upon the nonperformance of a condition subsequent"). The existence and validity of the 1987 easement as shown on the E Plan, however, is independent of any contractual obligations that M.V.I. trust owed to the board. If

---

[2] In particular, the judge found further evidence of the existence of Deston's sewer easement in a 1991 document titled "easement and agreement" between Lynne S. Trombly, trustee of Ward Avenue Realty Trust, and the then-trustees of M.V.I. trust, and a 1991 partial release, in favor of Trombly, issued by M.V.I. trust's mortgagee. The easement and agreement recognized, among other things, that the then-trustees, as owners of lots 7 and 8, enjoyed the right to install a sewer line within the 1987 easement over lot 8 and within easements over lot 7 connecting to the 1987 easement.

7

consistent with the intent of the relevant parties at the time, an easement shown on a plan is as valid as an easement mentioned in a certificate of title.  See Hickey, supra at 759; Jackson, supra at 712-713; Duddy v. Mankewich, 75 Mass. App. Ct. 62, 67 (2009), quoting Lagorio v. Lewenberg, 226 Mass. 464, 466 (1917) ("It has been said, however, that a right of way shown on a plan becomes 'appurtenant to the premises conveyed as clearly as if mentioned in the deed'").  Here, the intent of the developers, as manifested by the "progression of development," Hickey, 472 Mass. at 761, from the C Plan creating the municipal sewer easement through to the E Plan creating the 1987 easement, clearly establishes a connected series of sewer easements, including a sewer easement, appurtenant to lot 7, across Lot 8.

We disagree with Parkridge's assertion that the Land Court judge "incorrectly extended the doctrine of easement by estoppel to registered land and from there to a sewer easement."  To the extent that cases such as Duddy, 75 Mass. App. Ct. at 70 n.13, and Lane v. Zoning Bd. of Appeals of Falmouth, 65 Mass. App. Ct. 434, 438-439 (2006), relied on estoppel principles[3] applying the first Jackson exception, the Supreme Judicial Court "discern[ed]

---

[3] In this context, "easement by estoppel" refers to an implied easement by estoppel, also known as an "easement by boundary on a way" -- not to be confused with an easement by equitable estoppel.  See M. Pill, Real Estate Law § 8:15, at 1059 (2023-2024 ed. 2023).

8

no reason why, in principle, in such limited circumstances as in Lane and Duddy, application of an estoppel theory to subsequent purchasers would impede the purposes of the land registration scheme." Hickey, 472 Mass. at 758 n.30. Moreover, here, although the progression of development corroborates the existence of Deston's easement, Parkridge did not need to look any further than its own certificate of title to discover the existence of the 1987 easement on the E Plan. See Hickey, supra at 758 & n.30 (rejecting plaintiffs' argument that because plans referenced on their certificates of titles did not reference defendants' lots, no reasonable purchaser would have notice of defendants' rights of way; therefore, "the Land Court judge must have relied improperly on a theory of easement by estoppel").

Finally, we reject Parkridge's assertion that affirming the judgment "will erode the protections the registered land system provides the reasonable purchaser of registered land." This case presents a straightforward application of the first Jackson exception. See Hickey, 472 Mass. at 755 n.27 (declining to overrule Jackson and "adopt a stringent application of G. L. c. 185, §§ 46 and 47"). A reasonable purchaser of registered

9

land is able to protect itself by conducting a reasonable review of the documents in the system.

Judgment affirmed.

By the Court (Meade, Massing & Sacks, JJ.[4]),

Assistant Clerk

Entered:  March 19, 2024.

---

[4] The panelists are listed in order of seniority.